UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH J. BRASHEAR, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 4:22-cv-00569-SRC ) |
| v. | ) ) |
| SSM HEALTH CARE CORPORATION, | ) ) |
| Defendant. | |

**Memorandum and Order**

Plaintiff Sarah Brashear, individually and on behalf of all others similarly situated, seeks conditional certification and court-authorized notice, pursuant to the Fair Labor Standards Act, against Defendant SSM Health Care Corporation.  Doc. 53.  SSM opposes conditional certification and disagrees with Brashear's requested notice methods.  Doc. 58.  The Court grants Brashear's motion with respect to conditional certification and orders the parties to meet and confer regarding notice.

**I.     Background**

Plaintiffs allege that SSM and its subsidiaries automatically deducted thirty minutes of pay each shift for a meal break.  Doc. 53-1 at p. 3.  However, Plaintiffs claim patient-facing employees often worked during this designated lunch period.  *Id.*  They claim that requiring them to work these hours while not paying them often caused them to work more than forty hours without overtime compensation.  *Id.*  Plaintiffs claim that while SSM's written policy required paying employees for a missed meal break if they reported it, the actual practice was that supervisors discouraged employees from reporting missed breaks.  Doc. 53-1 at p. 4; *see also*

Docs. 53-2 at ¶ 14; 53-3 at ¶ 16; 53-4 at ¶ 14; 53-5 at ¶¶ 14, 16; 53-6 at ¶¶ 14–16; 53-7 at ¶¶ 14–16; 53-8 at ¶¶ 14–16.

SSM is a health system with twenty-three separate payroll-tax companies—only some of which are subsidiaries.  Doc. 58-1 at ¶ 5.  SSM claims to have 215 job titles, only 69 of which are patient facing.  Doc. 58-2 at ¶ 5.  On December 22, 2019, SSM and all of its "ministries" began asking employees whether they received their meal break during their shift.  Doc. 58 at pp. 10–11 (citing Doc. 58-1 at ¶ 35).  When employees reported that they did not receive their break, the manager was notified.  *Id.* at p. 10.  Before the policy, thirteen of SSM's "ministries" made automatic meal deductions.  *Id.* at p. 9.

On May 24, 2022, Brashear filed a Complaint in this Court under the FLSA, 29 U.S.C. § 201 et. seq., and the Illinois Wage and Payment Collection Act, 820 Ill. Comp. Stat. 115/3 (2022); 820 Ill. Comp. Stat. 115/2 (2022), against SSM.  SSM then moved to dismiss the state-law claim, Doc. 27, and the Court granted SSM's motion, Doc. 63, leaving only the FLSA claim.  Meanwhile, nineteen individuals consented to join this action.  Docs. 1-1, 9, 19, 23, 26, 29, 30, 34, 35, 37, 39–41, 43–52.  Plaintiffs then filed a Motion to Certify Class, Doc. 53, which SSM now opposes, Doc. 58.  Plaintiffs asks the Court to conditionally certify the following class under the FLSA:

> ALL HOURLY EMPLOYEES WHO WORKED FOR SSM HEALTH CARE CORPORATION, OR ANY OF ITS SUBSIDIARIES, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 24, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE SUBJECT TO AN AUTOMATIC MEAL BREAK PAY DEDUCTION.

Doc. 53-1 at p. 2.

**II.    Legal Standard**

Under the FLSA, plaintiffs may sue for failure to pay overtime and other violations of the statute on behalf of "themselves and other employees similarly situated."  29 U.S.C. § 216(b).

The statute does not define "similarly situated."  The Eighth Circuit has held that plaintiffs may be similarly situated if "they suffer from a single, FLSA-violating policy . . . ."  *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded*, 136 S. Ct. 1036 (2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).  When making this determination, the Court may consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *Id*. (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

When applying the FLSA to a potential group of plaintiffs, district courts in this circuit apply a two-step analysis.  *Getchman v. Pyramid Consulting, Inc.*, No. 4:16-cv-01208-CDP, 2017 WL 713034, at *4 (E.D. Mo. Feb. 23, 2017) (collecting cases).  In the first step, the plaintiff moves for conditional certification "for notice purposes at an early stage of the litigation."  *Id*.  In the second step, the court determines, after the close of discovery, whether the plaintiffs are actually similarly situated.  *Id*.  The plaintiffs' burden for the first step "is not onerous."  *Id*. (citing *Kautsch v. Premier Comm'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)).  Plaintiffs need only provide "substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  *Id*. (quoting *Davis v. Novastar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)).  Granted, plaintiffs cannot meet their burden by providing "unsupported assertions that FLSA violations were widespread," or assertions "not based on personal knowledge."  *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *Settles v. Gen. Elec.*, No. 12-00602-cv-W-BP, 2013 WL 12143084, at *2 (W.D. Mo. Feb. 19, 2013).  Instead, plaintiffs must make a "modest factual showing," *Kautsch*, 504 F. Supp. 2d at 690, sufficient to "establish[] a colorable basis for their claim that a class of similarly

situated plaintiffs exist." *McCallister v. First Banks, Inc.*, No. 4:13-cv-00561-HEA, 2014 WL 988448, at *2 (E.D. Mo. Mar. 13, 2014). "A colorable basis means that [plaintiffs] must come forward with something more than the mere averments in [the] complaint in support of [their] claim." *Id.*

"At first-stage certification the court exercises its discretion to determine whether a collective action is appropriate, but makes no credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." *Davenport v. Charter Commc'ns, LLC*, No. 4:12-cv-00007-AGF, 2014 WL 1272783, at *4 (E.D. Mo. Mar. 27, 2014) (internal citations omitted). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to opt-in." *Id.* (citing *Dernovish v. AT & T Operations, Inc.,* No. 09-cv-0015-ODS, 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010) (internal quotations and citation omitted)).

### III.   Discussion

#### A.   Conditional Certification

An automatic meal deduction does not necessarily violate the FLSA. *McClean v. Health Systems, Inc.*, No. 11-cv-3037-DGK, 2011 WL 6153091, at *6 (W.D. Mo. Dec. 12, 2011). This is particularly the case where an employer has, and properly follows, a written policy that requires employers to pay employees for all time worked. *Dernovish*, 2010 WL 143692, at *2. But employees may still state a claim for an FLSA violation if they can show that "Defendants have a 'common or uniform practice . . . to not follow [their] formal, written policy.'" *McClean*, 2011 WL 6153091, at *6 (quoting *White*, 2011 WL 1883959, at *9).

Plaintiffs allege that SSM and its subsidiaries automatically deducted thirty minutes of time worked every shift without relieving them of their duties, often causing employees to work

4

through their shift without a break.  Doc. 53-1 at p. 8.  Plaintiffs allege that SSM knew that putative class members worked through their shifts, without a break, but still applied the deduction.  *Id.*  Plaintiffs admit that SSM had a written policy to pay for all hours worked, but they still discouraged employees from reporting that they worked through a meal shift.  *Id.*  Thus, Plaintiffs adequately allege that SSM denies Plaintiffs, and other similarly situated employees, overtime wages by taking the meal-break deduction and discouraging employees from reporting when they worked through the deducted meal break.  *Id.*

The Court further finds that Plaintiffs have presented sufficient evidence to establish a "colorable basis" for conditional certification.  *McCallister*, 2014 WL 988448, at *2 ("Conditional certification is appropriate . . . 'when the plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exist.'") (internal citations removed).  The declarations from seven hourly employees who worked for SSM at six different facilities in five different patient-facing roles—each stating that that SSM automatically deducted a meal break even though they performed duties throughout the break—meet the required standard.  *See* Docs. 53-2–53-8.  The declarants describe essentially identical treatment in terms of how SSM managed their required meal breaks, including allegations that supervisors discouraged employees from filing "no-meal break reports."  *See id.*  Being based on personal knowledge, the Court finds these statements are admissible for the purposes of conditional certification.  *See Lindsay v. Wells Fargo Advisors, LLC*, No. 4:12-cv-0577-JAR, 2013 WL 943736, at *5–6 (E.D. Mo. Mar. 11, 2013) (recognizing that courts can "consider the affidavits in support of [p]laintiff's [m]otion for [c]onditional [c]lass [c]ertification even if the statements in the affidavits would not be admissible at trial").  Based on this evidence, the Court finds that Plaintiffs establish a colorable basis for their claim that SSM has a company-wide policy or

5

practice of automatically deducting thirty-minutes from employees daily pay, while discouraging employees from reporting when they don't take their break.

While SSM points to cases where district courts rejected conditional certification involving automatic-meal-period deductions, those cases are distinguishable. Doc. 58 at p. 18. Namely, many of those cases lacked support from affidavits of multiple employees, but only included support from a single plaintiff or the support only made allegations about a substantially smaller portion of the facilities. *See Wacker v. Pers. Touch Home Care, Inc.*, No. 4:08-cv-93-CDP, 2008 WL 4838146, at *3 (E.D. Mo. Nov. 6, 2008) (holding that providing a single affidavit and complaint does not constitute substantial allegations); *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381, at *2 (E.D. Mich. May 3, 2011) (denying conditional certification where plaintiff failed to identify other employees whose rights were violated); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009) (finding no common plan or policy where the declarants represented less than ten percent of the facilities). Here, Plaintiffs support their allegations with multiple affidavits, representing nearly thirty percent of the overall facilities. Docs. 53-2–53-8.

SSM also cites cases where the plaintiffs did not allege a common plan or policy of violating the FLSA. *See Ledbetter v. Pruitt Corp.*, No. 5:05-cv-329-CAR, 2007 WL 496451, at *4 (M.D. Ga. Feb. 12, 2007) (holding mere allegations that defendants had an automatic-meal-deduction policy did not violate the FLSA); *Verrett v. Pelican Waste & Debris, LLC*, No. 20-1035, 2021 WL 1063065, at *3 (E.D. La. Mar. 19, 2021) (denying conditional certification where there was no allegation of an unlawful plan); *Evans v. Cont. Callers, Inc.*, No. 4:10-cv-2358-FRB, 2012 WL 234653 at *5 (E.D. Mo. Jan. 25, 2012) ("[P]laintiff's bare assertion that [the employer] should have known that its employees were not taking lunch breaks, with nothing

more, is insufficient to constitute evidence that [the employer] engaged in a systematic policy of violating the FLSA with regard to its mealtime deduction."). However, here, Plaintiffs consistently allege that SSM management: (1) discouraged employees from reporting missed meal breaks, (2) did not report missed meal breaks, and (3) did not inform employees on how to report missed meal breaks. Docs. 53-2 at ¶ 14; 53-3 at ¶ 16; Doc. 53-4 at ¶ 14; 53-5 at ¶¶ 14, 16; Doc. 53-6 at ¶¶ 14–16; Doc. 53-7 at ¶¶ 14–16; Doc. 53-8 at ¶¶ 14–16.

Finally, SSM contends that Brashear's proposed class is unclear because it includes all employees and SSM subsidiaries. Doc. 58 at pp. 21–23. However, Brashear has made clear that its suit is against SSM and its "integrated health care network . . . throughout the Midwest." Doc. 20 at ¶ 21; *see also* Doc. 61 at p. 3. Further, Plaintiffs have consistently made clear that their collective includes patient-facing employees. Doc. 61 at p. 5; *see also* Doc. 20 at ¶ 23. Thus, SSM has been on notice about what businesses the class is suing and whom the class includes.

The Court finds that Plaintiffs provided substantial allegations that the putative class members were together victims of a common policy or plan. Plaintiffs adequately allege that, despite SSM's written policy to pay for all hours worked, its actual practice did not compensate employees for time worked during the meal break. *See McClean*, 2011 WL 6153091, at *6 (conditionally certifying collective action involving automatic-meal-break deductions even though the formal written policy claimed to compensate employees); *Trogdon v. Kleenco Maint. & Constr. Inc.*, 5:14-cv-05057, 2015 WL 11120400, at *1 (W.D. Ark. July 27, 2015) (affirming conditional certification of a collective action based on an alleged automatic-meal-break deduction).

**B.     Equitable Tolling**

Equitable tolling is a "limited and infrequent form of relief" that is available if a party establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Smithrud v. St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005)); *see also Fair v. Communications Unlimited, Inc.*, 4:17-cv-02391-SRC, 2019 WL 4695942 (E.D. Mo. Sept. 26, 2019). The party requesting this relief bears the burden of demonstrating that he or she satisfies this test. *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002). While equitable tolling is not available for all statutes, "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Holland v. Florida*, 560 U.S. 631, 645–46, (2010) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)). Every Circuit that has ruled on the issue has determined that the FLSA statute of limitations period is not jurisdictional. *See United States v. Wong*, 575 U.S. 402, 414 n.8 (2015) ("[E]very Court of Appeals to have considered the issue has found that § 6 of the Portal–to–Portal Act, which contains the same 'shall be forever barred' phrase, permits hearing late claims.").

Under the FLSA, an action is barred unless filed within two years after the cause of action accrued. 29 U.S.C. § 255(a). The limitation for willful violations is three years. *Id*.

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act –
>
> (a) if the cause of action accrues on or after May 14, 1947 – may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;

8

*Id.*  Unlike in a Rule-23 class-action procedure, a collective or class action under the FLSA commences on the date parties file written consent to join.  29 U.S.C. § 256.  As a result, the statute of limitations continues to run until a putative class member elects to join the suit. *Davenport v. Charter Comm'ns, LLC*, No. 4:12-cv-00007-AGF, 2014 WL 2993739 at *4 (E.D. Mo. Jul. 3, 2014).

Under Rule 23, each person within the description of the class in a class action is considered a class member and the judgment binds each class member unless he or she has "opted out" of the suit. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).  In a collective or class action under the FLSA, a person cannot become a party plaintiff, and a judgment does not bind the individual unless he or she has "opted into" the class by filing written consent.  *Id*.  Consequently, the complaint-tolling rule of Rule-23 class actions does not apply in FLSA actions.  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).  In an FLSA collective action, the action commences on the date one files written consent to join, and the statute of limitations begins tolling on that date.

"[S]tatutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  *Id*.  Statutes of limitations "ensure[] essential fairness to defendants and [bar] plaintiffs who [have] slept on [their] rights." *Id*.  Because of these principles underlying statutes of limitations, "[t]he doctrine of equitable tolling does not apply to 'garden variety' claims of excusable neglect, and should be

9

invoked only in exceptional circumstances truly beyond the plaintiff's control." *Jenkins v. Mabus*, 646 F.3d 1023, 1028-29 (8th Cir. 2011) (citing *T.L. ex rel Ingram v. U.S.*, 443 F.3d 956, 963 (8th Cir. 2006)).

The Eighth Circuit has not directly addressed the issue of equitable tolling in FLSA cases. *Davenport*, 2014 WL 2993739 at *4. District courts have taken varying approaches to the question of equitable tolling in FLSA cases. *See id.* at *5 (collecting cases). These courts held that if Congress wished to have opt-in plaintiffs' lawsuits relate back to the filing date of the lead plaintiff, Congress would have spelled out such a rule in the statute instead of spelling out the exact opposite. *Id*. These courts also held that there is nothing extraordinary about the passage of time between the filing of a motion and the issuance of notice to the class; this delay is anticipated and ordinary, and to permit tolling would transform the "extraordinary remedy" of equitable tolling into a routine, automatic one. *Id*. Other courts have held that delays between the filing of a motion for conditional certification and a ruling on the motion constitute "exceptional circumstances" allowing for equitable tolling. *Id*. at *4.

The Court finds the reasoning of courts that have denied equitable tolling in these circumstances to be more persuasive for several reasons. First, the statutory text of § 255(a) does not lend itself to equitable tolling ("every such action shall be forever barred unless commenced within [two or three years] . . ."). Second, had Congress wanted to extend the limitations period in collective actions, it could easily have done so by, for example, building in a tolling period between commencement of the action and the opt-in period or by expressly granting courts authority to toll the limitations period. Third, in the 45 years since the Supreme Court held in *American Pipe* that tolling applies to Rule-23 opt-out class actions, Congress has not amended § 255 or otherwise provided for tolling in FLSA collective actions. Fourth, the structure of the

10

FLSA, including the grace-period provisions of § 255(b), (c), and (d), further shows that Congress could have built tolling into the statutory text but chose not to. Fifth, the opt-in process for FLSA collective actions inherently involves delay between filing and opting in, so extending the limitations period based on litigation delays contravenes the structure that Congress chose. "Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute." *United States v. Beggerly*, 524 U.S. 38, 48 (1998) (citing *United States v. Brockamp*, 519 U.S. 347 (1997)).

Additionally, "[t]he party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." *Holliday v. J S Exp. Inc.*, No. 4:12-cv-01732, 2013 WL 2395333, at *7 (E.D. Mo. May 30, 2013) (quoting *Motley*, 295 F.3d at 824). "This generally involves 'establishing two elements: (1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way.'" *Id.* (quoting *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009).

Plaintiffs passively request that the Court "toll the statute of limitations from the date of filing [the motion] for conditional certification until the end of the notice period." Doc. 53-1 at p. 15. They claim "[i]t is in the best interest of justice that the statute of limitations be tolled for the unaware putative class members," but never attempt to show that these class members have been pursuing their rights or any extraordinary circumstances. *Id.* In fact, Plaintiffs even acknowledge that, in these cases, the statute of limitations continues to run until an individual files a consent form. *Id.* at 11; *see also* Doc. 61 at p. 14 ("[T]he *only* way to stop their wasting statute of limitations is to file their consent forms with this (or another) court." (citing 29 U.S.C. § 255)). Plaintiffs' only reasoning that the Court should go against the statutory language enforcing a statute of limitations is that other judges in this District have done so in some

11

situations in the past.  Doc. 61 at p. 11 (collecting cases).  The mere fact that other judges have done so in different circumstances fails to meet Plaintiffs' burden to show any extraordinary circumstances.  The Court denies Plaintiffs' informal request to toll the statute of limitations.

  **C.** **Notice**

Plaintiffs also seek court approval regarding the means and substance of Plaintiffs' proposed notice to putative members of the conditionally-certified class.  Plaintiffs asks the Court to authorize notice by mail, e-mail, text message, and posting at SSM facilities.  Doc. 53-1 at pp. 11–12.  They also request reminder notice by e-mail and text message.  *Id.* at p. 13.  While SSM does not oppose the sixty-day notice period, SSM opposes the method and content of Plaintiffs' proposed notice, as well as what information the Court requires SSM to disclose to Plaintiffs.  Doc. 58 at pp. 29–30.  Both parties express a willingness to meet and confer regarding the notice method.  Docs. 58 at p. 27 n.14; 61 at pp. 11–12.

The Court now orders the parties to meet and confer—i.e., actually speak—to address the disputes regarding notice and what information SSM must provide Plaintiffs.  By no later than July 13, 2023, the parties must file the following:  (1) the date, time, and length of the meeting; and (2) a description of any agreement reached regarding notice.  If the parties are not in agreement on notice, then each party must submit their best proposal and the Court will adopt one of the proposals in full, i.e., baseball arbitration.

**IV.** **Conclusion**

The Court grants Plaintiffs' motion to conditionally certify the class.  Doc. 53.  The Court denies Plaintiffs' passing request for equitable tolling.  Doc. 53-1 at p. 15.  Finally, the Court orders the parties to meet and confer—i.e., actually speak—regarding Plaintiffs' notice to prospective collective-action members.  By no later than July 13, 2023, the parties must file the

date(s), time(s), and duration of all such meet-and-confer sessions and a description of any agreement reached.  If the parties cannot agree, the Court orders each party to submit its best proposal and the Court will choose one proposal to adopt in full.

    So Ordered this 29th day of June 2023.

*SLR.CR*

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE