UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SARAH J. BRASHEAR,
**Individually and on behalf of all others similarly situated,**

      **Plaintiff,**

  v.

**SSM HEALTH CARE CORPORATION,**

      **Defendant.**

Case No. 4:22-CV-00569-SRC

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR COLLECTIVE ACTION SETTLEMENT APPROVAL**

Defendant SSM Health Care Corporation ("SSM") and Named Plaintiff Sarah J. Brashear, on behalf of herself and the Opt-In Plaintiffs (collectively, "Plaintiffs"), jointly submit this memorandum in support of their Joint Motion for Collective Action Settlement Approval.

## INTRODUCTION

The Parties seek preliminary approval of a settlement for the collective action claims ("Settlement Agreement" or "Agreement").[1] Under the terms of the Settlement Agreement, SSM will pay to resolve all claims brought by the Named Plaintiff and current Opt-In Plaintiffs under the Fair Labor Standards Act. Because the proposed Settlement Agreement is a fair, equitable, and reasonable resolution of the disputed claims and provides Plaintiffs with monetary relief, this Court should grant this Motion.

---

[1] The Parties will file the Settlement Agreement on the docket as a redacted document after filing the required motion to seal required by Local Rule 13.05. That motion and supporting memorandum will be filed immediately after the filing of the instant motion.

1

# ARGUMENT

### a. The Parties' FLSA Settlement Reflects a Fair and Equitable Resolution of a *Bona Fide* Dispute.

In the Eighth Circuit, a district court may approve an FLSA settlement upon a determination "that the litigation involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties." *See, e.g., Meller v. Bank of the West*, Civil No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562, at *8 (S.D. Iowa Sept. 10, 2018) (citing *Boland v. Baue Funeral Home Co.*, Cause No. 4:15-CV-00469RLW, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015)); *Shackleford v. Cargill Meat Solutions Corporation*, No. 12–CV–4065–FJG, 2013 WL 209052, at *2 (W.D. Mo. Jan. 17, 2013). The Settlement Agreement at issue here resolves a *bona fide* dispute and is fair and equitable.

### i. The Litigation Involves a Bona Fide Dispute.

"A settlement addresses a bona fide dispute when it reflects a reasonable compromise over issues that are actually in dispute." *Stainbrook v. Minnesota Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017). *See also Shackleford*, 2013 WL 209052, at *2 ("If the settlement reflects a reasonable compromise over issues . . . that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.").

In this case, the settlement agreement resolves a clear and actual dispute between the parties. Plaintiffs assert SSM failed to pay "various types of nurses, medical assistants, and other patient-facing employees" overtime because a 30-minute to one-hour meal-period was automatically deducted from their daily time even though they regularly worked during their meal-period breaks. (ECF No. 20, ¶¶ 5, 23). SSM answered the Amended Complaint and asserted affirmative defenses, disputing, among other things, whether collective treatment is appropriate; whether Plaintiffs were paid for time worked, including overtime; whether the claims preceded the

2

limitations period in the Portal-to-Portal Act; and whether Plaintiffs were exempt employees. (ECF No. 28, pp. 43-48). Under similar circumstances, courts in the Eastern District of Missouri have found a *bona fide* dispute existed. *See, e.g., Del Toro v. Centene Management Co.*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021); *Ezell v. Acosta, Inc.*, No. 4:16-CV-870 RLW, 2019 WL 8160704, at *2 (E.D. Mo. Apr. 4, 2019). Thus, the threshold requirement of a *bona fide* dispute is easily met here.

### ii. The Proposed Settlement Is Fair and Equitable.

The FLSA settlement before the Court is presumptively valid because it was negotiated at arm's length by experienced counsel. *See, e.g., Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Meller v. Bank of the West*, Civil No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562, at *6 (S.D. Iowa Sept. 10, 2018) (concluding settlement was presumptively valid, given, among other things, "the arm's length negotiations" and "the substantial experience of both plaintiff and defense attorneys"); *King v. Raineri Construction, LLC*, Case No. 4:14–CV–1828, 2015 WL 631253, at *2-3 (E.D. Mo. Feb. 12, 2015) (stating in context of evaluating an FLSA settlement that was the product of arm's length negotiation that "courts should be mindful of the strong presumption in favor of finding a settlement fair").

In addition to this validity presumption, when determining if a proposed FLSA settlement is fair and equitable, the Eighth Circuit recently endorsed a "totality of the circumstances" approach, including the consideration of five factors that may be relevant to a district court's evaluation of an FLSA settlement. *See Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2019) (citing with approval *Stainbrook*, 239 F. Supp. 3d at 1126 (identifying five of the many factors a district court may consider "[t]o determine whether settlement terms are fair and equitable to all

3

parties"); *Carillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132-33 (D.D.C. 2014) (reviewing the "totality of the circumstances" when determining the fairness of an FLSA settlement)).

The five factors courts typically consider when evaluating the fairness of an FLSA settlement include:

> (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case.

*Stainbrook*, 239 F. Supp. 3d at 1126 (*citing King,* 2015 WL 631253, at *2). Each of these factors weighs in favor of a finding the Settlement Agreement is fair and equitable.

### 1. The Stage of the Litigation and the Amount of Discovery Exchanged.

The first factor, which is the stage of the litigation and the amount of discovery exchanged, favors approval. Here, the parties exchanged thousands of pages of documents and payroll data about the merits of the case. The information afforded the parties an opportunity to substantially analyze liability, determine potential damages, and assess risk regarding the claims presented. Substantial discovery exchanged in this case favors approval. *See Johnson*, 2021 WL 2634669, at *5 ("[t]he amount of information exchanged suggests that the parties have had a substantial opportunity to analyze liability, determine potential damages, and assess the risk associated with the claims alleged"). Thus, the first factor weighs heavily in favor of approval.

### 2. Experience of Counsel, Lack of Overreach, and Arms-Length Negotiation.

The experience of counsel in this matter also favors approval. This FLSA collective action benefited from attorneys on both sides who are highly experienced in complex litigation, familiar with the facts and law in the case, and have negotiated settlements in other complex litigation cases, including class and collective action settlements. Anderson Alexander almost exclusively

handles class and collective wage and hour cases across the United States and regularly negotiates settlements in off-the-clock wage and hour cases like this one. Defense Counsel Ogletree Deakins and Dowd Bennett, and specifically the attorneys handling this case, are very experienced in handling class and collective action wage and hour litigation on behalf of employers nationwide.

The experience of counsel, as well as the parties' extensive settlement discussions, belies any suggestion the Settlement Agreement is the product of overreaching by SSM and shows it was the result of an arms-length negotiation. As such, the experience of counsel representing the parties, the absence of any overreaching, and the arms-length negotiation all favor approval.

### 3. Probability of Success on the Merits.

Finally, as to the probability of success on the merits, Plaintiffs remain steadfast about the validity and merits of their claims. However, Plaintiffs acknowledge significant risks remain regarding their claims. Those risks include defeating an inevitable decertification motion, succeeding at the liability and damages phases of trial, surviving post-trial motions, and succeeding with respect to an appeal to the Eighth Circuit and beyond. By compromising now, Plaintiffs have considered the probability of success regarding the merits and determined settlement now is a reasonable compromise.

### iii. A Service Award to Named Plaintiff Sarah Brashear Is Proper

The other terms of the Settlement Agreement are the product of good faith, arms-length negotiations. For example, Named Plaintiff Sarah Brashear is receiving separate consideration as a service award for her substantial efforts on behalf of the opt-in plaintiffs and her assistance to counsel. The Court should approve this proposed service award because it is reasonable and warranted based on the actions Named Plaintiff took during this litigation to protect, and advance, the interests of other similarly situated employees to whom a benefit has been conferred by this

settlement. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017) (stating the relevant factors for deciding if service awards are warranted include "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation"). *See also* Declaration of Clif Alexander, attached as Exhibit 1, at ¶¶ 20–22. Named Plaintiff actively participated, and assisted counsel, in all phases of this litigation, including working with counsel during the initial case investigation phase and preparing the original complaint. She also assisted with initial Rule 26 disclosures. With respect to case resolution, Named Plaintiff communicated with counsel about the parties' negotiations and settlement. Named Plaintiff also took a "reputational risk"[2] by attaching her name to litigation against her employer and could have been subject to difficulty securing employment with future employers learning of her involvement in such litigation.

Many courts have recognized the risk, time, and dedication an individual devotes to a representative lawsuit inures to the common benefit of others, thus warrants a service enhancement payment above, and beyond, what other class members receive from the settlement.[3] The modest

---

[2] See *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (approving incentive award of $10,000 to named plaintiff, and stating, "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employer.").

[3] *See, e.g., Caligiuri*, 855 F.3d at 867-68 (affirming service awards of $10,000 to each of the two named plaintiffs and noting (1) "courts in this circuit regularly grant service awards of $10,000 or greater", and (2) "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."); *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming incentive awards of $25,000 to each of the three named plaintiffs as compensation for their work and the benefit they conferred on the rest of the class); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in wage-and-hour settlement after 2½ years of litigation); *Willix v.*

service award requested here, in light of the involvement by Named Plaintiff and the result obtained, are certainly within the range of reasonable service awards routinely granted. Accordingly, the Court should approve the proposed service award.

### iv. Plaintiffs' Attorneys' Fees And Costs Are Reasonable

After the Court confirms the settlement terms are fair to the Plaintiffs, it reviews the Parties' agreement on the provision of fees and costs to Plaintiffs' counsel. The Eighth Circuit has determined, when examining agreed fees and costs, "any required review need not be a line-by-line, hour-by-hour review." *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018). Instead, courts assess whether the fees are fair and reasonable by considering (1) if the fee is fixed or contingent; (2) the amount involved and the results obtained; (3) the novelty and difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases. *Del Toro v. Centene Management Co.*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021) (*citing Keil v. Lopez*, 862 F.3d 865, 703 (8th Cir. 2017)).

Here, Plaintiffs ask the Court to approve reasonable attorneys' fees of approximately 33% of the gross settlement amount and litigation expenses of $3,645.45.[4] *See* Exhibit 1, ¶ 17. Fees and costs together total 38.5% of the gross settlement amount. This Court has recognized the "percentage of the benefit" approach to calculating fees is appropriate when the fees are fair and reasonable. *Del Toro*, 2021 WL 1784368, at *3. Such a percentage is well within the range of awards frequently awarded by courts in the Eighth Circuit. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (approving fees of one-third of the total settlement fund and noting courts

---

*Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after 3 years of litigation).

[4] This amount is not to exceed the amount set forth in § 2(B) of the Agreement.

have frequently awarded attorneys' fees ranging up to 36% or higher); *Del Toro*, 2021 WL 1784368, at *3 (approving attorneys' fees of 35% of a settlement fund in a wage and hour case).

The other factors also favor approving Plaintiffs' attorneys' fees and costs. Plaintiffs' counsel agreed to take this case on a contingency basis, accepting the risk of no recovery. Plaintiffs' counsel also agreed to advance all litigation fees, costs, and expenses. Further justifying Plaintiffs' request, this case involved motions addressing complex factual issues culminating in a lengthy settlement negotiation after voluminous payroll records and other data were exchanged. Finally, Plaintiff's counsel are exceptionally experienced in litigating collective and class actions, specifically FLSA litigation. *See* Exhibit 1, ¶¶ 4–14. All factors looked to by courts in this Circuit favor granting Plaintiffs' request for attorneys' fees and costs.

## **CONCLUSION**

The Parties believe the settlement terms represent a fair and reasonable compromise of the Parties' respective positions and satisfy the criteria set forth by the Eighth Circuit.

WHEREFORE, the Parties respectfully ask the Court to approve the Settlement Agreement and enter the Proposed Order, which will "secure the just, speedy, and inexpensive determination" of this action in accordance with Fed. R. Civ. P. 1. Should the Court determine a Status Conference with the Parties to discuss the Agreement would be helpful, counsel for the Parties stand ready to appear at a conference on the earliest date mutually convenient for the Court and counsel.

Date: January 5, 2024                    Respectfully submitted,

                                          **ANDERSON ALEXANDER, PLLC**

By:  /s/ *Clif Alexander*
     **Clif Alexander** (Admitted *Pro Hac Vice*)
     Texas Bar No. 24064805
     clif@a2xlaw.com
     **Austin W. Anderson** (Admitted *Pro Hac Vice*)
     austin@a2xlaw.com
     **Carter T. Hastings** (Admitted *Pro Hac Vice*)
     Texas Bar No. 24101879
     carter@a2xlaw.com
     819 N. Upper Broadway
     Corpus Christi, Texas 78401
     Telephone: (361) 452-1279
     Facsimile: (361) 452-1284

     **LAW OFFICES OF KENNEDY HUNT, P.C.**

By:  /s/ *Sarah Jane Hunt*
     Sarah Jane Hunt (63899MO)
     906 Olive Street, Suite 200
     St. Louis, MO 63101
     Phone: (314) 872-9041
     Fax: (314) 872-9043
     sarahjane@kennedyhuntlaw.com

*Counsel for Plaintiff and Putative Collective/Class Members*

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**

By:  /s/ *Patrick F. Hulla*
     **Patrick F. Hulla**
     Patrick F. Hulla       #41745(MO)
     4520 Main Street, Suite 400
     Kansas City, MO 64111
     816.471.1301
     816.471.1303 (*Facsimile*)
     patrick.hulla@ogletree.com

**Dowd Bennett LLP**

/s/ *James G. Martin*
**James G. Martin      #33586(MO)**
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
314.889.7300
314.863.2111 (*Facsimile*)
jmartin@dowdbennett.com

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Missouri, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Patrick F. Hulla
PATRICK F. HULLA